1  ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

2

3  THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

4  HELEN L. GILBERT (NYBN 4736336)
LAURA VARTAIN HORN (CABN 258485)

5  Assistant United States Attorneys

6      450 Golden Gate Ave
San Francisco, CA 94102

7      Telephone: (415) 436-7200
Fax: (415) 436-7234

8      Email: Helen.Gilbert@usdoj.gov
             Laura.Vartain@usdoj.gov

9

Attorneys for the United States of America

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,                )   **CASE NO. 3:22-CR-426-JSC**
                                             )
15      Plaintiff,                           )   **UNITED STATES' MOTIONS IN LIMINE**
                                             )
16   v.                                      )   Trial Date:      November 6, 2023
                                             )   Hearing Date:    October 26, 2023
17  DAVID WAYNE DEPAPE,                      )   Hearing Time:    11:00 a.m.
                                             )
18      Defendant.                           )   Judge:  Hon. Jacqueline Scott Corley
                                             )
19  _____ )

20

21

22

23

24

25

26

27

28

USA's MOTIONS IN LIMINE
3:22-CR-426-JSC

I.   **MOTION IN LIMINE 1: TO PRECLUDE DEFENDANT FROM INTRODUCING IRRELEVANT EVIDENCE REGARDING OTHER INDIVIDUALS THAT HE MAY HAVE INTENDED TO TARGET**

A.   **Introduction**

In the days leading up to Defendant's attempted kidnapping of Congresswoman Pelosi and his assault of Mr. Pelosi, Defendant researched other individuals, including politicians, and gathered certain information about them, including their residences. Defendant's interest in these other persons has nothing to do with the elements of the charged counts and is no defense to those elements. The government moves to exclude any reference to or evidence about Defendant's collection of information about any individuals aside from Congresswoman Pelosi and Mr. Pelosi.

B.   **Background**

The Indictment charges two counts: Count One charges Attempted Kidnapping of a Federal Officer or Employee. Congresswoman Pelosi is the victim of Count One. Count Two charges Assault on the Immediate Family Member of a Federal Official. Mr. Pelosi is the victim of Count Two. In the introductory allegations, the Indictment references Target 1 and a "target list," which is a phrase that Defendant used in his Mirandized interview. *See* Indictment ¶¶ 16(e), 18.

In discovery, the United States provided certain evidence regarding Target 1, as well as other individuals about whom Defendant collected certain information and/or expressed an interest in targeting ("other individuals"). Discovery as it concerns these other individuals includes:

- Defendant's Mirandized interview referenced his plan to target five additional individuals, including Target 1. Any portions of this interview that the government anticipates moving into evidence do not refer to Target 1 or these four other individuals.

- A sheet of paper seized from Defendant's pocket, which had the Pelosis' address, together with the phone number and address for Target 1.  The government intends to offer this paper into evidence with the phone number and address for Target 1 redacted.

- Defendant's computer as seized from his residence had information about Congresswoman Pelosi, Mr. Pelosi, and other individuals that Defendant discussed in his Mirandized interview, including Target 1, plus an additional politician. The government intends to offer into evidence information found on this device about Congresswoman

1    Pelosi and Mr. Pelosi, and not about any of the other individuals.

2    • Records obtained from an online search service indicated that Defendant ran searches on

3    Congresswoman Pelosi as well as several of the individuals discussed above, largely to

4    ascertain their addresses. The government intends to offer into evidence the search

5    related to Congresswoman Pelosi only.

6    The government does not intend to use any of this evidence about individuals other than

7    Congresswoman Pelosi and Mr. Pelosi in its case-in-chief.

8    In a sealed filing at Dkt. 61, Defendant proposed adding five of these other individuals' names,

9    including Target 1, to the Involved Individuals List attached to the parties' joint proposed jury

10   questionnaire. The Court declined to add the names to the questionnaire, noting that the determination as

11   to whether those names were relevant to *voir dire* could wait until a later point in time.

12   The government does not anticipate any evidence in its case-in-chief regarding any of these

13   individuals, including Target 1. The other individuals are not on the government's witness list, nor will

14   the government introduce any other testimony or offer any exhibits concerning them.[1]

15   **C.      The Court Should Exclude Irrelevant Evidence**

16   The charges in this case concern two victims: Congresswoman Pelosi (Count One) and Mr.

17   Pelosi (Count Two).  The other individuals whom Defendant researched are not relevant to any of the

18   elements on either count, including Defendant's requisite intent to commit either offense. The Court

19   should therefore exclude witness testimony and other evidence about them. *See* Fed. Crim. R. Pro. 401

20   and 402.  As to Target 1, whom Defendant has tried to serve with a trial subpoena, permitting such

21   testimony also would impose an unwarranted burden on Target 1 who has already been impacted by

22   his/her awareness of Defendant's interest in him/her.

23   For these reasons, the Court should exclude evidence concerning these individuals, including but

24   not limited to testimony from Target 1, as irrelevant.

25

26   [1]  The government intends to enter into evidence information about victims Congresswoman
     Pelosi and Mr. Pelosi that was recovered from one of Defendant's electronic devices.  At this time
27   absent stipulation, the government intends to introduce the electronic device that contained this
     information solely for identification purposes.  Although this device contains information about the
28   other individuals, including Target 1, the government does not intend to introduce this evidence nor
     provide the jury with the means to access the full contents of the electronic device.

USA's Motions in Limine
3:22-CR-426-JSC                                          2

**II.      MOTION IN LIMINE 2: TO PRECLUDE DEFENDANT FROM RAISING ANY ARGUMENT OR EXPERT EVIDENCE RELATING TO INSANITY, AND TO REQUIRE HIM TO PROFFER FACTS PRIOR TO ANY ARGUMENT REGARDING DIMINISHED CAPACITY**

      **A.      Defendant Has Not Noticed Any Expert Testimony Regarding an Insanity Defense, and Did Not Provide Any Notice of One**

Defendant's expert disclosures, if any, were due on September 20, 2023. *See* Dkt. 39-1 ¶ (Stipulation and Order to Modify Pretrial Deadlines and Continue Trial Date). Defendant did not notice any expert testimony regarding an insanity defense or any other topic. *See also* Fed. R. Crim. Pro 12.2(b) (requiring notice of expert evidence of a mental condition). Defendant also has not provided any notice of an insanity defense pursuant to Federal Rule of Criminal Procedure 12.2 (requiring notice within the time provided for pretrial motions or a date set by the Court).[2] Accordingly, the United States moves this Court to preclude the defense from (1) raising an insanity defense; or (2) introducing any expert evidence relating to insanity or a mental condition.

"One of the reasons that Congress enacted Rule 12.2(b) was to enable the government to prepare for cross-examination of the defendant's expert witnesses and to present any rebuttal witnesses to counter the defense expert's testimony." *United States v. Buchbinder*, 796 F.2d 910, 915 (7th Cir. 1986) (citing Conference Committee Notes, H.R. 94-414, 1983 amendment to Rule 12.2(b) (A "lack of notice 'would have meant that the government would not have been equipped to cross-examine the expert, that any expert called by the government would not have had an opportunity to hear the defense expert testify and that the government would not have had an opportunity to conduct the kind of investigation needed to acquire rebuttal testimony on defendant's claim . . .' concerning his lack of mental capacity.")).

To date, the defendant has not raised a defense under either provision of Federal Rule of Criminal Procedure 12.2.  Therefore, the Court should preclude any argument suggesting an insanity defense, the defense itself, or expert evidence relating to insanity or a mental condition.

//

---

[2] The pretrial schedule in this case does not set a date for pretrial motions. *See* Dkt. 39-1.

USA's Motions in Limine
3:22-CR-426-JSC                                                            3

1    **B.     The Court Should Require Defendant to Provide Some Evidentiary Basis for Any**
2          **Claim of Diminished Capacity Prior to Arguing it at Trial**

3       To the extent that Defendant intends to raise a diminished capacity defense, that defense could

4 only apply to Count One, as Count Two is a general intent crime. *See United States v. Twine,* 853 F.2d

5 676, 679 (9th Cir. 1988). The Court should require Defendant to proffer a factual basis for any such

6 defense prior to raising it in either *voir dire* or in his Opening Statement. The evidence in this case

7 establishes that Defendant formed a plan to kidnap Congresswoman Pelosi, and that he went to the

8 Pelosi Residence intending to carry out his plan. He was disrupted by the fact that Congresswoman

9 Pelosi was not home. In short, the evidence establishes Defendant's intent, and there is unlikely to be

10 any evidence that Defendant can point to that will justify a diminished capacity defense and jury

11 instruction. Accordingly, Defendant should be required to proffer to the Court any basis to tell the jury

12 that a mental condition impacted his ability to form the intent to kidnap Congresswoman Pelosi before

13 injecting any confusing argument or statements about diminished capacity.

14       Diminished capacity as a defense "is directly concerned with whether the Defendant possessed

15 the ability to attain the culpable state of mind which defines the crime." *Twine*, 853 F.2d at 678. To the

16 extent Defendant intends to ask for the diminished capacity jury instruction, this will be a topic for the

17 Court to take up in October or during trial. *See* Dkt. 39-1 (October 18 filing date for joint proposed jury

18 instructions). Based on what the government knows now, Defendant will not be able to establish that he

19 had any mental condition that would warrant instructing on this defense. In fact, in statements that

20 Defendant made to San Francisco Police Department, Defendant asserted that he was not on any

21 substances, and he also disclaimed certain mental health conditions.

22       Accordingly, the government requests that the Court require a proffer of expected foundation for

23 anything Defendant may wish to comment on regarding diminished capacity prior to Defendant raising

24 it before the jury, so as to establish any potential relevance and to avoid juror confusion.

25 //
26 //
27 //
28 //

USA's Motions in Limine
3:22-CR-426-JSC             4

### III.   MOTION IN LIMINE 3: TO REQUIRE DEFENDANT TO PROFFER A GOOD-FAITH BASIS FOR ANY *HENTHORN*-TYPE INQUIRY OF A LAW ENFORCEMENT WITNESS

To date, the United States has disclosed certain *Henthorn* information relevant to one law enforcement officer on the government's witness list.  The United States respectfully requests that Defendant be required to make some offer of proof and offer of relevance regarding any alleged misconduct by this (or any other) law enforcement officer outside the presence of the jury prior to inquiring about such alleged misconduct before the jury. Doing so will streamline any cross-examination to only matters that the Court determines are relevant. It will avoid the government having to object in the course of questioning, requesting a side bar, and then seeking to rehabilitate any officer based on irrelevant lines of questioning.  The same is true of defense inquiries regarding alleged bad acts of civilian witnesses.  Consistent with prior decisions in this district, the government therefore requests that the Court decide the admissibility of *Henthorn*-type questioning of witnesses prior to such questioning and outside the presence of the jury.  *See. e.g.*, *United States v. Cerna*, 08-CR-730-WHA, Dkt. 3644 at 24 (N.D. Cal. Mar. 3, 2011) (requiring that the use of *Henthorn* material be vetted with Court prior to questioning, outside the presence of the jury, except where the questioning concerns express, sustained finding of untruthfulness, false statement, or false report); *see also* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.").

### IV.   MOTION IN LIMINE 4: TO PRECLUDE DEFENDANT FROM INTRODUCING HIS OWN HEARSAY STATEMENTS

Defendant has made several admissions in this case. The government may introduce excerpts from statements he made to San Francisco Police Department officers at the Pelosi residence, his Mirandized interview, and a call he made to KTVU in January 2023. Defendant, though, cannot admit his own out-of-court statements at trial through other witnesses or exhibits—or by augmenting the government's selected excerpts.

A defendant's own out-of-court statements, offered by and for himself, constitute inadmissible hearsay.  The rules of evidence do not provide an exception for self-serving, exculpatory statements made by a defendant seeking to introduce the statements. *See Williamson v. United States*, 512 U.S.

594, 599-600 (1994) (holding that hearsay exception for statements against interest does not allow admission of non-self-inculpatory statements); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming exclusion of defendant's non-self-inculpatory statements and rejecting defendant's arguments based on rule of completeness and the Confrontation Clause).  Accordingly, defendants should not be permitted to introduce their own inadmissible hearsay statements in their cases-in-chief, or "back door" these statements by eliciting them from the government's witnesses on cross-examination. *See United States v. Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007) (upholding district judge's ruling precluding on hearsay grounds defense counsel from attempting to elicit defendant's exculpatory statements, on cross-examination, from law enforcement officers); *Ortega*, 203 F.3d at 682 (same); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (district court properly precluded defense from eliciting, on cross-examination, defendant's post-arrest statements denying robbery participation).

This is true even when defendants' own non-inculpatory statements are coupled with other contemporaneous statements that are self-inculpatory.  *See Williamson*, 512 U.S. at 599 (exception to hearsay rule for statements against penal interest does not allow admission of non-self-inculpatory statements, even if made within broader narrative that is generally self-inculpatory); *see also Mitchell*, 502 F.3d at 964-65; *Ortega*, 203 F.3d at 682.  This is because the self-inculpatory statements constitute admissions of a party opponent, Fed. R. Evid. 801(d)(2), whereas a defendant's post-arrest, non-self-inculpatory statements constitute garden-variety hearsay, *Ortega*, 203 F.3d at 682 (citing *Williamson*, 512 U.S. at 605).  Otherwise, a defendant would be permitted to place their own statements "before the jury without subjecting [themselves] to cross-examination, precisely what the hearsay rule forbids." *Fernandez*, 839 F.2d at 640; *Ortega*, 203 F.3d at 682.

The Court should thus preclude Defendant from introducing or eliciting his own out-of-court hearsay statements during trial, including by augmenting the excerpts of his statements designated by the government.

//

//

//

//

1  **V.     MOTION IN LIMINE 5: TO PRECLUDE DEFENDANT FROM IMPEACHING MR.
          PELOSI WITH HIS PRIOR CONVICTION FOR DRIVING UNDER THE INFLUENCE**

2

3          It is public knowledge that Mr. Pelosi pleaded guilty to driving under the influence ("DUI") in

4  Napa County, California in August 2022.  The government anticipates calling Mr. Pelosi as a witness in

5  its case. His prior conviction is irrelevant to the facts of Defendant's assault of Mr. Pelosi on October

6  28, 2022. Any cross-examination of him about the DUI would be improper. The government therefore

7  requests that the Court preclude any cross-examination about the irrelevant prior conviction.

8

9
   DATED:  September 27, 2023                          Respectfully submitted,
10
                                                       ISMAIL J. RAMSEY
11                                                     United States Attorney

12
                                                         /s/
13                                                     HELEN L. GILBERT
                                                       LAURA VARTAIN HORN
14                                                     Assistant United States Attorneys

15

16

17

18

19

20

21

22

23

24

25

26

27

28