UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 22-cr-00426-JSC-1 |
|---|---|
| Plaintiff, | |
| v. | **ORDER RE: DEFENDANT'S MOTION FOR A NEW TRIAL** |
| DAVID WAYNE DEPAPE, | Re: Dkt. No. 218 |
| Defendant. | |

A jury convicted Defendant David Wayne Depape with the attempted kidnapping of Congresswoman and Speaker Emerita of the United States House of Representatives Nancy Pelosi (Speaker Pelosi) and assault of her husband, Paul Pelosi. (Dkt. No. 180.)[1] Before the Court is Mr. Depape's motion for a new trial. (Dkt. No. 218.) After carefully considering the briefing, and with the benefit of oral argument on March 27, 2024, the Court DENIES the motion.

**BACKGROUND**

On November 9, 2022, a grand jury indicted Mr. Depape on two counts: (1) the attempted kidnapping of Speaker Pelosi on account of the performance of her official duties in violation of 18 U.S.C. § 1201(a)(5), (d); and (2) the assault of Paul Pelosi, the spouse and immediate family member of Nancy Pelosi, a United States official as defined in § 115(c)(4), by means of hitting a hammer on Mr. Pelosi's head, with intent to impede, intimidate, interfere with and retaliate against Nancy Pelosi on account of the performance of her official duties in violation of § 115(a)(1)(A). (Dkt. No. 3.) On November 16, 2023, a jury convicted Mr. Depape on both counts. (Dkt. No. 180.)

---

[1] Record citations are to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

At trial, Mr. Depape contested only the mens rea element of each count, arguing he did not intend to kidnap Speaker Pelosi or assault Paul Pelosi on account of the performance of Speaker Pelosi's official duties. (Dkt. No. 214 at 48-73.) Instead, Mr. Depape insisted he was motivated by Speaker Pelosi's partisan political activities and his desire to attack the ruling class. (*Id*.) "Ms. Pelosi was the first of many targets whom Mr. Depape believed were part of a ruling class cabal that engaged in child molestation, including many figures who were not federal officials, like Target 1, Tom Hanks, and George Soros." (Dkt. No. 218 at 7.)

During trial, Mr. Depape sought the following theory-of-defense instruction:

> **DEFINITION OF "ON ACCOUNT OF THE PERFORMANCE OF OFFICIAL DUTIES"**
>
> To prove that Mr. DePape's actions were taken on account of the performance of Nancy Pelosi's official duties, the government must prove beyond a reasonable doubt that Mr. DePape acted because of her performance of official duties as a Member of Congress, and not for some other reason. A Member of Congress's performance of official duties includes activities such as: legislation, constituent services, and committee work. A Member of Congress's performance of official duties does not include activities such as: fundraising; campaigning; work on behalf of the Democratic party, the Democratic National Committee, or the Democratic Congressional Campaign Committee; or any personal matters not related to official duties.

(Dkt. No. 168 at 11.) At the charging conference later the same day, the parties debated the phrasing of and whether to add jury instructions defining "on account of" and "performance of official duties." (Dkt. No. 213 at 163-96.) Ultimately, the Court declined to give jury instructions defining "on account of the performance of official duties" and instead delivered the Ninth Circuit model jury instructions for both counts. (Dkt. Nos. 213 at 195, 214 at 16-18.)

In closing, the government argued Mr. Depape targeted the Pelosis because of her role as Speaker of the United States House of Representatives and head of the Democratic Party in the House. (Dkt. No. 214 at 18-19, 40-46.) As evidence, the government relied on Lieutenant Hurley's post-arrest interview of Mr. Depape, in which Mr. Depape describes Speaker Pelosi as the "leader of the pack" and explains he planned to break Speaker Pelosi's kneecaps and wheel her into Congress, and Mr. Depape's statements to paramedics immediately after the assault about "the lies and shit coming out of Washington, D.C." (*Id*. at 40-43.)

2

> He was going to break her kneecaps to teach her a lesson, that her endless fucking lies and corruption had a price. That's what he says. And this is key, he says, "Every time she goes into Congress, every other fucking corrupt piece of shit in there is going to see her wheeling in in a wheelchair; they're going to realize that there is a fucking consequence for being the most evil fucking people on the planet." This is intent to impede, to intimidate, to interfere with a federal official, Speaker Nancy Pelosi, while she is engaged in the performance of her official duties.
>
> This is the center of the evil and of the lies and of the corruption that the defendant is talking about. What is this? He tells you, it's Congress, where Nancy Pelosi performs her official duties; in fact, she is the leader of Congress. Who better to teach a lesson to than the leader of the pack? The defendant uses the word "leader of the pack." I use the word "speaker." To him, they are the same thing. There is no daylight there. He intends to seize and confine Speaker Pelosi on account of the performance of her official duties as the speaker.

(*Id*. at 42-43.) The government argued Mr. Depape transferred his intent to harm Speaker Pelosi to Mr. Pelosi, again citing Lieutenant Hurley's interview with Mr. Depape:

> This is the last piece: Why did the defendant assault Paul Pelosi? He told Lieutenant Hurley why.
>
> "I am here for the fight. If you stop me from going after evil, you will take the punishment instead." Take a moment with that. What is evil? To the defendant, it's Washington, it's Congress, it's the leader of the pack, it's Speaker Nancy Pelosi, the head of the Democratic Party. That is her official position. Take the punishment instead, in her stead. That is why he assaulted Paul Pelosi. The defendant inflicted the punishment he meant for Nancy Pelosi; he meant for her because, as we would say, she was the speaker of the House, the official top Democrat. As the defendant would say, because she was the evil corrupt leader of the pack of Democrats.

(*Id*. at 45.)

In closing argument, the defense pointed to Mr. Depape's other targets to show he

> didn't go to that house because he had some particular fixation against only Nancy Pelosi. He didn't go there because of anything she did as part of her official duties as a member of Congress or speaker of the house. She was just one part of a larger plan to root out the corruption of the ruling class, the cabal, to stop the molestation of children, and to expose the truth to everyone.

(*Id*. at 51.) The defense further argued:

> The leader of the pack meant the leader of the Democratic Party, the political party, not the leader of the Democrats in Congress. . . . And [Mr. Depape] believes the Democratic party, a political party that is

3

1
2
>   not part of the government, is on a corrupt crime spree, going after a rival campaign and that Nancy Pelosi was the face of that, lying on TV on behalf of the Democratic Party. That is not on account of any of her official congressional duties.

(*Id*. at 64-65.)

In rebuttal, the government called the defense's division between politics and official action "a made-up distinction." (*Id*. at 73.) "The defendant made no such distinction, and there's nothing in your instructions that talks about a distinction between politics, whether that means Democratic politics or fundraising politics, and official duties or actions." (*Id*.)

Mr. Depape now moves for a new trial under Federal Rule of Criminal Procedure 33 on the grounds (1) it was error not to instruct the jury on the meaning of "on account of the performance of official duties" and (2) the government prejudicially misstated the law concerning "performance of official duties" during its closing argument. (Dkt. No. 218.)

## DISCUSSION

"[T]he court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992). "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). "By the plain terms of Rule 33, however, this Court's focus must be whether failing to grant a new trial would result in manifest injustice." *United States v. Jinian*, No. CR 09-1103 JSW, 2011 WL 5056978, at *7 (N.D. Cal. Oct. 24, 2011), *aff'd*, 712 F.3d 1255 (9th Cir. 2013), and *aff'd*, 725 F.3d 954 (9th Cir. 2013). The Ninth Circuit applies an abuse of discretion standard in reviewing motions for a new trial. *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 821 (9th Cir. 1985); *see United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) ("[W]e will affirm a district court's factual finding unless that finding is illogical, implausible, or without support in inferences that may be drawn from the record.").

**I.  Proposed Theory-of-Defense Jury Instruction**

"A criminal defendant has a constitutional right to have the jury instructed according to his

theory of the case, provided that the requested instruction is supported by law and has some foundation in the evidence." *United States v. Marguet-Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011) (cleaned up). The government does not dispute that Mr. Depape's theory-of-defense instruction had some foundation in the evidence. Rather, the government insists Mr. Depape's proposed instruction was not supported by the law and the provided jury instructions adequately covered the defense theory.

After much discussion at the charging conference, the defense finally requested the Court instruct the jury:

> **DEFINITION OF "ON ACCOUNT OF THE PERFORMANCE OF OFFICIAL DUTIES"**
>
> To prove that Mr. DePape's actions were taken on account of the performance of Nancy Pelosi's official duties, the government must prove beyond a reasonable doubt that Mr. DePape acted *because of* her performance of official duties as a Member of Congress.

(Dkt. No. 213 at 186 (emphasis added).) The defense sought to argue "because of" required the government to prove beyond a reasonable doubt Mr. Depape's sole intent was Speaker Pelosi's performance of her official duties. (*Id.* at 192-93 ("They have to prove that that was his intent beyond a reasonable doubt. His intent was on account of her official duties beyond a reasonable doubt. And that is it. Solely."); 193-94 ("If there was something that was more than that and that was just a minor thing, then I don't think that's enough. I don't think that proves beyond a reasonable doubt that that's why he acted.").) The Court found the instruction misstated the law because the statute's use of "on account of" does not require sole intent. (*Id.* at 188, 192 ("'On account of' does not mean sole. I'm making that finding.").) However, the Court did find "there must be a causal connection between the charged conduct and Nancy Pelosi's actions as a member of Congress." (*Id.* at 187; *see id.* at 177 ("[T]he cases are quite clear that what is meant by performance of official duties is not that [Speaker Pelosi] actually has to be performing them, [but] that there must be a causal connection between the charged conduct and the actions as a member of Congress.").)

Section 115(a)(1) "contains a specific intent element," and punishes only those who act "with the intent to impede, intimidate, interfere with, or retaliate against such officials on account

1   of the officials' performance of official duties.  Thus, a conviction under that statute could only be
2   had upon proof that the [defendant] intended the [act] to impede, intimidate, interfere with, or
3   retaliate against the protected official." *United States v. Stewart*, 420 F.3d 1007, 1017 (9th Cir.
4   2005).  "The statute speaks in terms of a threat made 'on account of the performance of official
5   duties,' not to draw attention to a particular official duty, but instead to assure that the threat
6   generally relates to the officer's performance of official duties rather than to a personal dispute
7   having nothing to do with the officer's job functions." *United States v. Williamson*, 903 F.3d 124,
8   131 (D.C. Cir. 2018).

9   Mr. Depape avers "the phrase 'on account of the performance of official duties' requires
10  the jury to find that the defendant committed the alleged illegal act *because of* the victim's
11  *performance* of her official duties." (Dkt. No. 218 at 14.)  Citing the Supreme Court's
12  interpretation of a provision of the Internal Revenue Code in *O'Gilvie v. United States*, 519 U.S.
13  79, 83 (1996), Mr. Depape insists the phrase "on account of" means "for the sake of: by reason of:
14  because of."  Mr. Depape cites as support the Ninth Circuit's interpretation of "on account of" in
15  *Reyes-Guerrero v. I.N.S.*, 192 F.3d 1241, 1244-45 (9th Cir. 1999), a case considering a petition for
16  political asylum.  Mr. Depape also raises a now-vacated panel opinion from the Eleventh Circuit
17  holding "on account of the performance of official duties" in § 1521 "establishes the prohibited
18  purpose of filing a false lien or encumbrance, i.e., creating a causal connection between the filing
19  of a false lien or encumbrance and some act taken by a federal officer or employee as part of his
20  official duties." *United States v. Pate*, 43 F.4th 1268, 1273 (11th Cir. 2022), *reh'g en banc*
21  *granted, opinion vacated*, 56 F.4th 1336 (11th Cir. 2023), *and on reh'g en banc*, 84 F.4th 1196
22  (11th Cir. 2023).  "Thus, § 1521 makes it illegal to file a false lien against the property of a federal
23  officer or employee because of something he *did* as part of his official duties." *Id*.  So, Mr.
24  Depape argues, the jury should have been instructed to find Mr. Depape acted because of Speaker
25  Pelosi's performance of her official duties as a Member of Congress.

26  But, as the Court explained at the charging conference, the problem with using "because
27  of" in this case is it incorrectly implies a sole-intent requirement where it does not exist.  (Dkt. No.
28  213 at 186-88, 192 ("'On account of' does not mean sole.").)  Mr. Depape asked the Court to

6

instruct the jury "because of" means "and not for some other reason." (*Id*. at 185-88, 192-94.) But statutes with analogous intent requirements do not command the government prove a defendant acted with sole intent. *See United States v. Smith*, 831 F.3d 1207, 1217 (9th Cir. 2016) (as to obstruction of justice charges under §§ 371, 1503, "rejecting the claim that a defendant's unlawful purpose to obstruct justice must be sole or primary. A defendant's unlawful purpose to obstruct justice is not negated by the simultaneous presence of another motive for his overall conduct. We noted that over two decades ago."); *United States v. Banks*, 514 F.3d 959, 969 (9th Cir. 2008) (as to charges of violence in aid of racketeering, ruling "[p]eople often act with mixed motives, so the gang or racketeering enterprise purpose does not have to be the only purpose or the main purpose of the murder or assault. But it does have to be a substantial purpose."); *United States v. Pepe*, 81 F.4th 961, 978 (9th Cir. 2023) (as to travel with intent to engage in illicit sexual conduct under § 2423(b), ruling "a 'motivating purpose' is sufficient for conviction."). And though "'because of' is another way to express a causal connection," the defense's proposed instruction misstates the law because the phrase "on account of" in the statute cannot be read to require the government to prove Mr. Depape's only motivation was Speaker Pelosi's performance of her official duties. (Dkt. No. 213 at 188.)

To the extent Mr. Depape now argues "because of" does not mean "only" and is merely a synonym of "on account of," the provided jury instructions adequately cover this defense theory. Jury Instruction Numbers 13 and 14 required the government to prove the causal connection between Speaker Pelosi's official duties and Mr. Depape's intent to harm the Pelosis. (Dkt. No. 175 at 15 ("For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt . . .the defendant intended to . . . kidnap . . . and hold a federal officer against her will, on account of the performance of her official duties"), 16 ("For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt . . . the defendant did so with . . . intent to retaliate against the federal official on account of the performance of her official duties").)

Mr. Depape also argues these instructions were insufficient because "the final instructions nowhere clarified what 'official duties' were at issue, i.e., Ms. Pelosi's official duties *as a Member*

*of Congress*. Only the defense's proposed instruction clarified that 'performance of official duties' must relate to Ms. Pelosi's official Congressional duties." (Dkt. No. 221 at 6.) The defense argues "it was critical that the jury was instructed that only actions against her taken on account of her duties as a Member of Congress could sustain a criminal conviction," "[e]specially given that there was testimony about Ms. Pelosi's other duties—such as her roles with Democratic National Committee and the Democratic Congressional Campaign Committee." (*Id*. at 7.) But Jury Instruction Number 13 defines a "federal officer" as "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)" and Jury Instruction Number 14 defines a "United States official" as "the President, President-elect, Vice President, Vice President-elect, a Member of Congress, a member-elect of Congress, a member of the executive branch who is the head of a department listed in 5 U.S.C. § 101, or the Director of the Central Intelligence Agency." (Dkt. No. 175 at 15-16.) So, no further instruction was required to define official duties.

\* \* \*

Because the defense's proposed jury instruction misstated the law and the provided jury instructions adequately covered the defense theory, the Court properly denied Mr. Depape's theory-of-defense jury instruction. *United States v. Whittemore*, 776 F.3d 1074, 1078 (9th Cir. 2015). Accordingly, Mr. Depape's motion for a new trial on this basis is DENIED.

**II.   Prosecutorial Misstatement of Law**

A prosecutor's misstatements of law during closing argument are grounds for reversal if the statements "are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *United States v. Velazquez*, 1 F.4th 1132, 1136 (9th Cir. 2021). Mr. Depape claims "the government's statement that everything Ms. Pelosi did that was in any way related to politics constituted performance of her official duties as a Member of Congress misstated the law." (Dkt. No. 218 at 16-17.) In closing, the government argued:

> The Defense talked a lot about this distinction between politics and official action. This is a made-up distinction. The defendant made no such distinction, and there's nothing in your instructions that talks about a distinction between politics, whether that means Democratic politics or fundraising politics, and official duties or actions. So let's

> look at the instruction.
>
> "On account of the performance of her official duties." Nowhere in there is that defined. The same term is used in the second set of instructions. Again, it's not defined here. There's no reason to believe that this distinction that the Defense has made up has anything to do with your deliberations.

(Dkt. No. 214 at 73.) The government relies on two D.C. Circuit opinions to support its argument the defense's distinction between politics and official action is made-up: *Williamson*, 903 F.3d 124, and *United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir.), *opinion supplemented on denial of reh'g*, 68 F.3d 489 (D.C. Cir. 1995).

In *Williamson*, the D.C. Circuit found § 115(a)(1)

> speaks in terms of a threat made "on account of the performance of official duties," not to draw attention to a particular official duty, but instead to assure that the threat generally relates to the officer's performance of official duties rather than to a personal dispute having nothing to do with the officer's job functions. For instance, the statute would not reach a threat arising from a personal dispute with a neighbor who happens be a law enforcement officer, where the subject of the disagreement is entirely unconnected to the officer's performance of his job.

903 F.3d at 131. In *Rostenkowski*, the D.C. Circuit observed:

> [T]he life of a congressman—as incumbent legislator and perpetual candidate for office, whose official day ends only after a round of nominally "social" events at which he is obliged to appear, and whose weekends and holidays are only an opportunity to reconnect with his constituents—makes the line between "official work" and "personal services" particularly difficult to draw. . . . For the "ordinary person," unlike a legislator, the distinction between work and life may be relatively clear. For a Congressman, it is not so clear; service in the United States Congress is not a job like any other, it is a constitutional role to be played upon a constitutional stage. Therefore, the Executive may not expect the Judiciary to resolve against a Member of Congress an ambiguity in the Rules by which the Legislature governs itself, if reason allows otherwise.

*United States v. Rostenkowski*, 59 F.3d 1291, 1312 (D.C. Cir.), *opinion supplemented on denial of reh'g*, 68 F.3d 489 (D.C. Cir. 1995). Neither *Williamson* nor *Rostenkowski* define the scope of a Congressperson's official duties; indeed, the government relies on these cases for the proposition a Congressperson's official duties are difficult to define and can involve more than legislation. The government insists it would be inappropriately narrow to limit the definition of "performance of official duties" to legislative activity in a case involving someone like Speaker Pelosi, "who does

not go off duty like a law enforcement officer and who can be targeted 'on account of the performance of her official duties' by someone targeting her because she is the Speaker of the House of Representatives." (Dkt. No. 219 at 15.)

Attorneys are given "wide latitude" in closing arguments to make "reasonable inferences from the evidence presented at trial." *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997). "Criticism of defense theories and tactics is a proper subject of closing argument." *Id*. In response to the defense's argument Mr. Depape targeted Speaker Pelosi for her political activity within the Democratic Party wholly unrelated to her official duties as a Congressperson, (Dkt. No. 214 at 58-66), the government identified the lack of evidence Mr. Depape himself made such a distinction or was aware of the ethical rules binding Congresspeople. (*Id*. at 73-74 ("For him, it's all the same.").) The government recalled Mr. Depape's statements about wanting to break Speaker Pelosi's kneecaps and wheel her onto the floor of Congress. (*Id*. at 74 ("The defendant didn't say he wanted her wheeled out with those broken kneecaps to the [Democratic Congressional Campaign Committee]. He didn't say he was going to wheel her out to the [Democratic National Committee]. . . . No, he said Congress.").) The government also mentioned a defense witness's testimony that "Members of Congress run officially as members of political parties." (*Id*. at 75-76 ("Congress is run by two parties: The Democrats and the Republicans. They're trying to divorce anything related to being a Democrat from Nancy Pelosi's official position and that's just not right. This is her position. She is officially the head of the Democrats in the House.").) The government's argument—that Speaker Pelosi's performance of her official duties included her political role as leader of the Democratic Party in the House of Representatives—was within the scope of appropriate argument and not a misstatement of law.

* * *

Accordingly, Mr. Depape's motion for a new trial on the grounds the government misstated the law during its closing argument is DENIED.

//
//
//

**CONCLUSION**

For the reasons stated, Mr. Depape's motion for a new trial is DENIED.

This Order disposes of Docket No. 218.

**IT IS SO ORDERED.**

Dated: April 1, 2024

JACQUELINE SCOTT CORLEY
United States District Judge